IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.	09-CR-3593 JEC

RICHARD WARREN TEDHAMS,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence Seized From 36 Cerrado Loop, Eldorado Division, Santa Fe, New Mexico and Fruits of the Poisoned Tree, filed February 1, 2010 (Doc. 15)("Motion").  Having considered the Motion, the Government's Response, the parties' submissions, and held a hearing on March 25, 2010, I find the Motion not well-taken and it is denied.

**I.**	**Background**

This charge against Defendant Tedhams in this case began with a tip from a confidential source of information ("SOI") regarding a large marijuana grow 85 miles east of Las Vegas, New Mexico.  Following confirmation of the grow site at the identified location (approximately 350 plants), agents spoke with Defendant Tedhams – then going by alias James Stiles – at his home, 36 Cerrado Loop, Santa Fe, New Mexico.  Tedhams had been implicated by the SOI as responsible for the logistics and planning of the operation.  The conversation turned up nothing, but several hours later the agents returned to 36 Cerrado Loop and saw that a trash bin had been placed out on the dirt road in front of Defendant's residence.  They inspected the contents of the

trash container and discovered a Coleman cooler and a black packboard, both having been spray-painted in a camouflage pattern like those found at the marijuana grow site. The agents transported the items to Albuquerque for submission into evidence and arranged for K-9 Handler Tim Miller to run his dog around the cooler. Miller advised that his K-9 alerted to the Coleman cooler. The items found, the canine alert, and the SOI's identification of Defendant became the primary basis for probable cause in support of a warrant to search Defendant's residence, issued by a magistrate judge on October 26, 2009.

Upon executing the warrant on October 27, 2009, agents found, *inter alia*, a shotgun in Defendant's residence. As a result, Defendant Tedhams is charged with being a convicted felon in possession of a firearm. Tedhams seeks to suppress all evidence and statements flowing from the search of his residence on the grounds that the search warrant issued by the magistrate judge was unsupported by probable cause.

The Government contends that there was indeed a substantial basis for the probable cause determination and even if a substantial basis was lacking, the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), operates to preclude suppression as a remedy.

**II.      Discussion**

**A.      Denial of Defendant's Request for a *Franks* Hearing**

As a preliminary matter, in a teleconference on March 16, 2010, I orally denied Tedhams' request to expand the scope of the suppression hearing to include a "*Franks* hearing." In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court held that, in limited circumstances not present here, a defendant is entitled to an evidentiary hearing to determine whether the warrant was issued in reliance on a deliberately or recklessly false affidavit. In

order to justify a *Franks* hearing, a defendant must first establish by a preponderance of the evidence that officers intentionally or with reckless disregard for the truth omitted material information from, or included false information in, the affidavit in support of the warrant. *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001). A defendant cannot rely on conclusory statements, but rather must support his position with "affidavits or sworn or otherwise reliable statements of witnesses . . . or [in the case that such cannot be provided] their absence [must be] satisfactorily explained." *Franks*, 438 U.S. at 171. A defendant is entitled to an evidentiary hearing under *Franks* when he makes a substantial preliminary showing that both (1) a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit; and (2) the allegedly false statement is necessary to the finding of probable cause. *Id.*

I determined that no such showing was made by Defendant Tedhams, as his request for hearing referenced only the following loose allegations pertaining to minor discrepancies between the affidavit in support of the search warrant and the facts as recited by the Government in its Response to Tedhams' Motion to Suppress.

The Affidavit in Support of Search Warrant ("Affidavit") states in pertinent part as follows:

> On October 26, 2009, Affiant and S/A Greg Strothman drove to 3636 Cerrado Loop, James "J.R." STILES residence. ***It was revealed while at the residence, STILES had placed his trash out on the dirt road contained in a plastic trash container for pick-up.*** The affiant and Greg Strothman retrieved items from his trash consisting of a camouflage cooler and black packboard, identical to items located at the marijuana grow. The Affiant and S/A Greg Strothman transported the items to the Albuquerque District Office for submission into evidence. The Affiant arranged for TFO K-9 Handler Tim Miller to run his dog around the cooler. TFO Tim Miller advised his K-9 "Lango" alerted to the Coleman cooler.

Aff. at ¶ 8. (Attached as Exhibit 1 to Defendant's Motion to Suppress). (Emphasis added). The

Government's Response to Defendant's Motion to Suppress differs slightly, stating that

> [i]n response to this information [from the SOI pertaining to the grow and Stiles' involvement], Garver and DEA Special Agent Greg Strothman traveled to the general location of the grow and corroborated the information provided by the SOI concerning the drop-off point for individuals walking into the grow site. Further, in August, 2009, DEA agents arranged for aircraft to conduct a fly-over of the suspected grow area. From an altitude of 15,000 feet using high powered lenses, DEA agents were able to identify what they believed to be marijuana plants.
> Following discovery of the marijuana grow, on October 26, 2009 Garver and Strothman proceeded [to] 36 Cerrado Loop in Santa Fe, in an attempt to interview James Stiles. Although Mr. Stiles expressed interest in the ongoing investigation, he provided no information that would assist the investigation. After departing Stiles' residence, Strothman and Garver returned to the residence several hours later to see if any developments had taken place as a result of the interview. Upon their return, Garver and Strothman noticed that a trash container **had been placed** on the dirt road in front of the residence. The trash container had not been there when the agents had conducted the interview with Stiles.

Response at 2-3 (emphasis added). Thus, the Affidavit states that Stiles (Tedhams) himself had placed the trash bin in front of his residence while the Response brief states that the trash "had been" placed out. This, according to Defendant, mischaracterizes an *inference* on the part of the agents that Stiles (Tedhams) placed it there as an *observation* of Tedhams placing it there. Similarly, Tedhams references a discrepancy between the Affidavit statement that the items of interest located in the trash bin were *"identical"* to those found at the grow site, while the Government's Response brief refers to the same items as *"substantially identical."* Compare Aff. at ¶ 8 *with* Resp. at 3.

I determined that these minor discrepancies did not and could not meet the threshold for a *Franks* hearing, as they are patently insufficient to establish by a preponderance of the evidence that officers intentionally or with reckless disregard for the truth omitted material information from, or included false information in, the Affidavit. *See, e.g., United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir. 1988) (an affiant's negligent or innocent mistake resulting in a false

statement in an affidavit did not discharge defendant's burden). "To mandate an evidentiary hearing, the challenger's attacks must be more than conclusory and must be supported by more than a mere desire to cross examine." *Franks*, 438 U.S. at 171. Because Defendant's loose and unsupported allegations fell short of the standard, I denied Tedham's request for a *Franks* hearing.

### B.     The Affidavit in Support of Warrant was not Deficient

Issuance of a search warrant must be supported by probable cause. *United States v. Danhauer*, 229 F.3d 1002. 1005 (10th Cir. 2000). "[P]robable cause [to search] exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009). The inquiry is "whether the facts presented in the affidavit would 'warrant a [person] of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999). A magistrate judge's task is to "make a practical, common sense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place . *Id.* at 1182 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Nolan*, 199 F.3d at 1182-83.

The Affidavit in support of the warrant to search Defendant's residence at 36 Cerrado Loop, Eldorado Division, Santa Fe, New Mexico, relied primarily on (1) information from the SOI received during May and June of 2009, and (2) items found in the trash pull on October 26, 2009 to which a K-9 alerted. *See generally* Aff.

Tedhams argues that the spray-painted Coleman cooler and packboard discovered inside

the trash container, placed on the dirt road outside his residence, are insufficient to create a nexus linking him to those items and, by extension, to the illegal drug activity. Specifically, Tedhams contends that "[t]here was no evidence in the affidavit that Mr. Tedhams, or anyone else at 36 Cerrado Loop had discarded the Coleman cooler or the black [p]ackboard into the trash as opposed to anyone else who had public access to the trash container." Motion at 6. Tedhams, through counsel, further developed this argument at the hearing, stating that

> it is common knowledge that a can placed on the road is publicly accessible. That is the other side of Mr. Tedhams not having dominion or control or a privacy interest in that container. And that common knowledge finding of the Supreme Court in *Greenwood* also appears at odds with the common sense inference that the government is relying on regarding the trash can. That common sense inference is in the government's response and it's about the can, itself, the container, that if it's found in front of somebody's house the inference is the container is connected to that house.

Draft Transcript of Hearing on Motion to Suppress, held March 25, 2010, at 2:9-25. As the Court understands it, then, Tedhams contends that the contents of the container cannot be both (1) abandoned for purposes of relinquishing a privacy interest and thereby enabling agents to rifle it free from Fourth Amendment constraints; and also (2) create a nexus tying Defendant to the drug activity for purposes of establishing probable cause to search the residence in front of which the container sits. Stated somewhat differently, Defendant argues that because the container was accessible to others and thus abandoned, and the Affidavit did not establish that anyone saw Tedhams place it out or indicate how long it had been out, the contents are of insufficient probative value to connect Defendant to the marijuana grow through the items found.

   The Court finds Defendant's arguments unpersuasive. First, although it is considered common knowledge that a trash container placed on the road is accessible to the public,

6

*California v. Greenwood*, 486 U.S. 35 (1988), the mere possibility of someone other than the resident placing things in or removing things from the container does not contravene persuasive authority recognizing a reasonable, common sense inference that trash in a container sitting in front of a residence likely comes from that residence.  *See, e.g., United States v. Fisher,* No. 01-5033, 2002 U.S. App. Lexis 6675 at * (10th Cir. April 10, 2002); *United States v. Timely*, No. 08-3160, 2009 U.S. App. LEXIS 17064 at * (10th Cir. July 30, 2009) ("the fact both bags were located together in the alley directly behind the residence to be searched is more than adequate to establish the requisite nexus for the purpose of issuing a search warrant."); *United States v. Berrocal*, No. 08-3160, 2009 U.S. App. LEXIS 27423 (10th Cir. Oct. 31, 2000) ("the information provided by the informant undermines Berrocal's argument that the items found in his trash contianer were dropped there by someone else.").  Notably, Defendant does not even contend that someone else actually placed the items in the container.  Instead, he seeks a broad determination by the Court that a curbside trash container cannot be both abandoned and its contents connected to the resident in front of whose home it sits unless an affiant observes the resident bring the container outside and keeps constant watch over the container until it is searched.   The Court is not prepared to make such a leap.

Moreover, as the Government identifies, Defendant ignores the information provided by the SOI when arguing that the contents are insufficient to establish probable cause to search the residence, and he later erroneously discounts the SOI's information as unreliable.  Yet the probable cause standard required the magistrate judge to consider *all* of the circumstances set forth in the Affidavit to determine if a fair probability that evidence of a crime will be found.  *See Illinois v. Gates*, 462 U.S. at 238.

The Affidavit sets forth specific information provided by the SOI related to the marijuana

grow and attendant operations. Aff. at ¶¶ 4-7.  The agents corroborated the SOI's information when they located and seized 350 marijuana plants at the location described by the SOI.  *Id.* at ¶ 7.  The SOI's information was further substantiated when agents "traveled to and corroborated information regarding the location described by the SOI concerning the drop-off point for the people packing into the location where the marijuana field is located."  *Id.* at ¶ 5.  Once at the marijuana grow site, agents located items such as tents and cooking utensils consistent with the SOI's account of people living on the site during the growing season.  *Id.* at ¶ 7.  These undisputed facts establish sufficient credibility of the SOI for purposes of the probable cause inquiry.  *See United States v. Sporeleder*, 635 F.2d 809, 812 (10th Cir. 1980)(information provided by SOI supported probable cause based on corroboration of disclosed location being used for manufacture of illegal narcotics.).  With regard to the SOI identifying Tedhams, the Affidavit reads "[t]he SOI stated STILES currently resides in the Santa Fe, New Mexico area, specifically 36 Cerrado Loop, Eldorado Division.  The SOI stated STYLES had previously moved from an address in Eldorado Division.  This information was corroborated by law enforcement which indicated STILES moved from 10 Esquila, Santa Fe, New Mexico."  Aff. at ¶ 4.  The law does require that information from the SOI must be corroborated with regard to each piece of information provided, but only some corroboration such that information can be considered reasonably reliable.  *See Gates,* 462 U.S. 213, 230-33 ("veracity, reliability and basis of knowledge are all highly relevant in determining the value of his report . . . a deficiency in one category may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability.").

     In sum, the aggregate of reliable information contained in the Affidavit in this case provided a substantial basis for the magistrate judge's probable cause determination.  I pay great

deference, as I must, to the initial determination and find no legitimate justification to disrupt it. *See United States v. Roach*, 582 F.3d 1182, 1200 (10th Cir. 2010)(only if the affidavit supporting the warrant application provides no substantial basis for concluding that probable cause existed" should a determination be reversed).

### C. Even if Probable Cause Wasn't Present, The Good Faith Exception Operates to Preclude Suppression

Even if the Affidavit falls short of establishing probable cause, the good faith exception to the exclusionary established in *United States v. Leon*, 468 U.S. 897 (1984), precludes suppression on these facts. In *Leon*, the Supreme Court held that if law enforcement officers "reasonable rely[] on a search warrant issued by a detached and neutral magistrate," and the warrant is later deemed invalid, the evidence obtained will not be subject to suppression. *Id.* at 913. I find that the agents submitted an affidavit to a neutral and detached magistrate judge, who had undisputedly not abandoned his judicial role, and they received a facially valid search warrant which they executed in good faith. Accordingly, even if probable cause was not present in the Affidavit, suppression is not warranted.

### III. Conclusion

In summary, Defendant Tedhams failed to make the requisite showing to establish entitlement to a *Franks* hearing. The Affidavit in support of a warrant to search Defendant Tedham's home was supported by probable cause and the Magistrate Judge's determination shall stand. Finally, even if the information contained in the Affidavit were insufficient, the good faith exception would operate to preclude suppression.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence Seized From 36 Cerrado Loop, Eldorado Division, Santa Fe, New Mexico and Fruits of the Poisoned Tree, filed February 1, 2010 (Doc. 15) is **DENIED.**

Dated April 22, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE